UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TARA MARTIN CURRY,<br><br>Plaintiff,<br><br>v.<br><br>WEKAIO, INC.; WEKAIO LTD.; SEQUOIA ONE PEO LLC; RYAN BRADY; LISA HOLLEY; JONATHAN MARTIN; INTEKHAB NAZEER; ANDREW PERRY; ANATA SHUKHMAN; LIRAN ZVIBEL; JAMES GIBSON; GREGORY GOLUB; ROBERT LAWSON,<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*  Civil Action No. 1:24-cv-12825-ADB<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Tara Martin Curry ("Curry" or "Plaintiff") brought this action in Massachusetts state court against her former employer ("Weka," "Sequoia," or "the Company")[1] and various individuals (collectively, the "Defendants"), alleging various state law causes of action related to alleged victimization by her boss, Andrew Perry ("Perry"). [ECF No. 1-1 ("Complaint" or "Compl.")]. Now before the Court is Plaintiff's motion to remand the action back to state court. [ECF No. 15 ("Motion" or "Mot.")]. For the reasons articulated herein, Plaintiff's motion to remand is **GRANTED**.

---

[1] According to the Complaint, at all relevant times, Plaintiff was employed by "WekaIO, Inc.," which is a wholly owned subsidiary of "WekaIO, Ltd.," and "Sequoia One PEO LLC." [Compl. ¶¶ 10–11]. She refers to WekaIO, Inc., WekaIO, Ltd., and Sequoia One PEO LLC individually at times, but also collectively as "the Company." The Court refers to each entity as it appears in the relevant allegation in the Complaint.

I.   **BACKGROUND**

Plaintiff, a "dedicated mother of two young children, devoted wife, and determined employee," [Compl. ¶ 3], was hired by Weka on September 13, 2021 as Director of Partner Sales, [id. ¶ 76]. At the outset of her employment, Perry served as her direct supervisor. [Id.]. Perry "held a prominent leadership position within the company and . . . [had a] . . . reputation for misogyny [which] was widely known." [Id. ¶ 4].

Plaintiff's Complaint describes in great detail various alleged incidents of sexual harassment by Perry during Plaintiff's time at the Company. See, e.g., [Compl. ¶¶ 53 (Perry using sexual metaphors in job interview); 59 (Perry "bragg[ing] about having sexual intercourse with a woman. . . he . . . met at an adult entertainment club"); 90 (Perry referring to Plaintiff's new supervisor using sexualized, derogatory language); 60, 93–115 (Perry exposing his genitalia to Plaintiff during a work trip and asking who she would "fuck at the company")]. As relevant to the Motion, these incidents culminated in Plaintiff speaking with Liran Zvibel, the Company's Chief Executive Officer, on two separate occasions. [Id. ¶¶ 57, 122, 130]. On the second occasion, which occurred on January 4, 2022, Zvibel stated that Weka would commence an investigation into Perry's behavior. [Id. ¶ 130–31]. The Company hired Anat Shukhman to investigate Plaintiff's concerns, with the two meeting three times between January 6 and January 26, 2022. [Id. ¶¶ 146, 164].[2]

On January 25, 2022, Plaintiff's counterpart, Gregory Ross, informed her that the Company's Regional Sales Manager, Ryan Brady ("Brady"), disclosed the Company's

---

[2] The Company did not, however, make changes to Plaintiff's reporting structure, thus "requiring her to continue working with Perry . . . [and leaving her with] . . . no choice but to request a leave of absence." [Compl. ¶ 143]. "On January 5, 2022, Weka placed Plaintiff on a paid leave of absence." [Id. ¶¶ 144].

2

investigation to him.  [Compl. ¶ 179].  In recounting their conversation, Ross revealed to Plaintiff that:

- Brady – who Ross believed was intoxicated – called him on the evening of January 21, 2022, while driving back from dinner with a Dell employee;
- Brady disclosed that Weka was investigating allegations made by Plaintiff, surmising (incorrectly) that she and Perry had engaged in sexual relations;
- Brady stated that he shared the details of Weka's investigation with the Dell employee that he had dined with earlier that same evening; which – per Brady's account – led to comments casting Plaintiff in a negative light;
- Brady shared his support for Perry, stating that he was working with him to help discredit Plaintiff's commission and retaliation concerns.

[Id.].  On January 26, 2022, Ross informed Plaintiff that he had reported Brady's revelations and innuendo.  [Id. ¶ 180].

Plaintiff filed her Complaint in the Massachusetts Superior Court for Middlesex County on September 23, 2024.  See generally [id.].  On November 12, 2024, Defendants removed the case to federal court based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  [ECF No. 1 ("Notice of Removal")].  Plaintiff filed her Motion to Remand on December 12, 2024, [Mot.], which Defendants opposed on January 16, 2024, [ECF No. 26 ("Opp.")].

## II.     MOTION TO REMAND

### A.     Legal Standard

Under 28 U.S.C. § 1441(b), "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction under section 1332(a) ... may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  However, "plaintiff may not impede a defendant's right of removal by fraudulently joining a non-diverse defendant who has no real connection to the case."  Surabian Realty Co., Inc. v. CUNA Mut. Grp., 245 F. Supp. 3d 297, 299 (D. Mass. 2017) (citing Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014)).

When considering a claim for fraudulent joinder, the Court must determine whether the party seeking removal to federal court has carried their "burden of demonstrating by clear and convincing evidence 'either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of action against the non-diverse defendant in state court.'" Surabian, 245 F. Supp. 3d at 299 (quoting Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 5 (D. Mass. 2001)). "[A]ny doubts in the evidence should be construed in favor of remand because the court has a responsibility to police the border of federal jurisdiction." Swanson v. Lord & Taylor, LLC, No. 12-cv-10151, 2012 WL 3776450, at *2 (D. Mass. Aug. 28, 2012) (internal quotation marks and citation omitted).

### B.     Discussion

Plaintiff moves to remand this case to state court, arguing that Defendants have not met their burden to demonstrate that diversity jurisdiction exists in light of the fact that the parties are not, in fact, completely diverse. [ECF No. 16]. Defendants assert that removal was proper based on diversity jurisdiction because Defendant Brady, the only home state defendant, was fraudulently joined. [Opp.]. Specifically, Defendants argue that there is "no reasonable possibility that the state's highest court would find that the [C]omplaint states a cause of action upon which relief may be granted" against Brady based on "the factual allegations against . . . [him, which] . . . are set forth in a single paragraph of the 481-paragraph Complaint," and detailed in full supra. [Id. at 4, 5 (internal quotation omitted)].

Plaintiff asserts two claims against Brady: (1) defamation, [Compl. ¶¶ 377–84 (Count XV)], and (2) tortious interference, [id. ¶¶ 385–398 (Count XVI)]. Defendants have not

4

suggested there was outright fraud committed in the Complaint, so the only question before the Court is whether there is a reasonable possibility that Plaintiff has a claim against Brady.

To state a claim for defamation under Massachusetts law, a plaintiff must allege: "(1) that '[t]he defendant made a statement, concerning the plaintiff, to a third party'; (2) that the statement was defamatory such that it 'could damage the plaintiff's reputation in the community'; (3) that '[t]he defendant was at fault in making the statement'; and (4) that '[t]he statement either caused the plaintiff economic loss ... or is actionable without proof of economic loss.'" Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012) (alterations in original) (quoting Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 510–11 (Mass. 2003)).

Defendants' primary argument against Plaintiff's defamation claim is she has not successfully alleged a false statement because "the only alleged statement Plaintiff attributes to Brady in support of her defamation claim is unequivocally comprised of (1) a **fact** (*i.e.*, Weka was conducting an investigation), and (2) and **opinion** (*i.e.*, Brady 'surmise[ed]' that Plaintiff and Perry had engaged in sexual relations), which is not actionable as defamation." [Opp. at 7].[3] Defendants' argument is unavailing as to the purported "opinion" statement.

---

[3] Defendants additionally argue, citing to Massachusetts state case law, that defamation claims are subject to a stricter pleading standard than Federal Rule of Civil Procedure 8(a), which requires Plaintiff to identify the "precise language she is claiming to be defamatory." [Opp. at 7]. The First Circuit has held, however, that Massachusetts' heightened pleading standard for defamation claims does not affect the pleading standard when such claims are alleged in federal cases. Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir.2003) (holding that state pleading requirements, "so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law"). Under Rule 8(a), Plaintiff is "not required to set forth the alleged defamatory statements verbatim." N. Shore Pharm. Servs. v. Breslin Assocs. Consulting LLC, 491 F. Supp. 2d 111, 124 (D. Mass. 2007). Instead, Plaintiff need only set forth a "short and plain statement of the claim ... in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, (2007). For the reasons articulated, the Court is satisfied that Plaintiff has met her burden.

"Whether a statement is fact or opinion is determined by whether the statement would be understood by a reasonable reader as containing 'objectively verifiable facts.'" Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 531 (1st Cir. 2023).  Here, whether Plaintiff engaged in sexual relations with her boss is objectively verifiable – so much so that Brady (incorrectly) "surmised" that the investigation was looking into it.  [Compl. ¶ 179].  The fact that Brady "surmised" the information, rather than being told it outright, does not transform the statement into an opinion.  Moreover, "[a]t the pleading stage … a statement that can reasonably be understood as either fact or opinion is sufficient to survive a motion to dismiss." Conformis, 58 F.4th at 531.  Construing every ambiguity in Plaintiff's favor, as the Court must at this stage, whether Brady's statement was a fact or an opinion is, at best, unclear, which is sufficient to defeat Defendants' argument.

The Court is otherwise satisfied that Plaintiff has pled sufficient facts to allege defamation against Brady.  Although the allegations against Brady are admittedly barebones compared to the level of detail in other parts of the Complaint, the allegations that do exist against Brady establish that, on January 25, 2022, Brady informed Ross and an unnamed Dell employee that Plaintiff had engaged in sexual relations with her boss, which was false.  [Compl. ¶ 179]; N. Shore Pharmacy, 491 F. Supp. 2d at 124 (requiring enough facts to place defendant on "fair notice" of claim).  Moreover, such statement is certainly capable of "hold[ing] [P]laintiff up to scorn, hatred, ridicule or contempt, in the minds of any considerable and respectable segment in the community,'" Stone v. Essex Cty. Newspapers, Inc., 330 N.E.2d 161, 165 (Mass. 1975), and indeed, as pled, it did just that, [Compl. ¶ 179 (conversation with Dell employee "led to comments casting Plaintiff in a negative light")].  As to fault, Plaintiff has also pled that Brady was at least negligent in making this statement, given that it was based on "surmise" and made as part of an effort on behalf of Perry "to help discredit" Plaintiff's various concerns, [id. ¶ 179];

6

Shay, 702 F.3d at 82 (requiring at least negligence to impose liability on defendant for defamation). Finally, given that the statement arguably relates to her professional reputation, she need not show evidence of economic harm. Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 508 (1st Cir. 2002) ("Statements that harm one's professional reputation also constitute slander per se.").[4]

Because Plaintiff has stated a plausible claim for defamation against Brady, the Court need not reach Plaintiff's tortious interference claim. The merits of the claim are better assessed in the first instance by the state court.

### III.   CONCLUSION

Accordingly, Plaintiff's motion for remand, [ECF No. 15], is GRANTED. This case shall be remanded to the Middlesex Superior Court of the Commonwealth of Massachusetts.

**SO ORDERED.**

February 19, 2025                                      /s/ Allison D. Burroughs
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE

---

[4] The notion that this statement related to her professional reputation is further supported by the fact that Brady made it to an employee at Dell, Plaintiff's former employer and also an account she had been tasked with acquiring and managing at the Company, which she did with much success. [Compl. ¶¶ 40, 82, 93, 105, 184].